# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENESSEE

| | |
|---|---|
| **KATORIA S. WILLIAMS,** | } |
| **DEMETRI M. FAULKNER** | } |
| **Plaintiffs,** | } |
| | }**CIVIL ACTION** |
| **vs.** | }**FILE NO. _____** |
| | } |
| **SHELBY COUNTY SCHOOL SYSTEM,** | } |
| **MEMPHIS CITY SCHOOL SYSTEM,** | } |
| **AND REGISTERED AGENT,** | } |
| **MAJORIE N. DOUGLAS,** | } |
| **and its assigns, successors in interest,** | } |
| **et al.** | } |
| **Defendants.** | } |
| | / |

## COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND 42 U.S.C. 1981

COME NOW **KATORIA STOKES WILLIAMS** (hereinafter, "Plaintiff Williams") and **DEMETRI M. FAULKNER** (hereinafter, "Plaintiff Faulkner") and file this Complaint against Defendants, showing as follows:

## JURISDICTION

1.

This action is brought pursuant to Sections Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, and 42 U.S.C. 1981, for employment discrimination.  Jurisdiction is specifically conferred upon the Court by 42 U.S.C.

§ 2000e-5, 28 U.S.C. §§1331, 1343, and 1367.  Relief is sought under 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 1981a(b).

2.

The Court has jurisdiction over claims brought under state law in that these claims arise under the same nucleus of operative facts which form the basis of the Federal claims and are pendent thereto.

**VENUE**

3.

A substantial part of the events or omissions giving rise to the claims in this matter occurred in this judicial district in Shelby County, Memphis, Tennessee. One or more defendants is located in this judicial district, and venue is thus proper in the Memphis Division of the United States District Court for the Western District of Tennessee, pursuant to 28 U.S.C §1391.

**PARTIES**

4.

Plaintiffs are black females who at all times relevant hereto were employees of Shelby County School System.

5.

Additionally, Plaintiffs were or had been employees of Memphis City School System before it merged with Shelby County School System.

2

6.

Defendant **Shelby County School System** (hereinafter "Defendant SCSS") is a Tennessee Corporation, authorized to do business in Tennessee.  At all times relevant to this Complaint, Defendant SCSS conducted business in the State of Tennessee, Shelby County.

7.

Defendant, **Memphis City School System** (hereinafter "Defendant MCSS") is a Tennessee Corporation, authorized to do business in Tennessee.  At all time relevant to this Complaint, Defendant MCSS conducted business in the State of Tennessee, Shelby County.

8.

Defendant, **Marjorie N. Douglas** (hereinafter, "Defendant Douglas"), was employed by Defendant SCSS.

9.

All Defendants can be served as provided by law.

## FACTUAL ALLEGATIONS – PLAINTIFF KATORIA S. WILLIAMS

10.

Plaintiff Williams filed charges against the Defendants with the Tennessee Equal Employment Opportunity Commission, charging the Defendant with the acts of discrimination, in January 2014.

11.

The Equal Employment Opportunity Commission issued a Notice of Right to Sue, which was received by Plaintiff on or about March 1, 2017, a copy of which Notice is attached as Exhibit A.

*Williams' Contractual Position*

12.

Plaintiff Williams was employed by Defendant MCSS, on or about September 2008 through December 2013, during which she worked as a Federal Program Advisor.

13.

Sometime in late 2013 or early to mid 2014, MCSS merged with SCSS.

14.

Plaintiff Williams continued her position as a Federal Program Advisor under her new supervisor, Defendant Douglas.

15.

Plaintiff Williams had a one year contract with SCSS/MCSS, which was renewable each year.

*Williams' Qualifications and Work Record*

16.

Plaintiff Williams had 20 years of teaching experience at the time she was terminated, and she was a tenured employee.

17.

Plaintiff Williams was a good-productive employee of Defendant SCSS/ MCSS prior to the merger and after the merger.

18.

During Plaintiff William's employment with Defendants SCSS/MCSS, she was never written up nor had any adverse disciplinary reports to her file, until she moved under Defendant Douglas' supervision.

*Discrimination, Harassment, Hostile Work Environment*

19.

During Plaintiff Williams' employment with Defendant SCSS/MCSS, she was subjected to discrimination and harassment on account of her race by Defendants MCSS/SCSS and Douglas.

20.

For example, Defendant Douglas had a "shit list" and "black list" of black employees who she targeted for mistreatment.

21.

Plaintiff Williams was told by co-workers that she was on this year's "shit list", and co-workers started to shy away from Williams because Yvonne Jones was told by Douglas to stay away from Williams.

22.

Defendant Douglas took assignments away from Plaintiff Williams and had someone else to do it.

23.

Defendant Douglas would not allow Plaintiff Williams to leave her office to perform duties that were assigned to her, while she would permit the Caucasian employees to leave their office and work.

24.

Defendant Douglas brought staff members into meetings that Plaintiff Williams previously requested that she and Douglas meet one-on-one, for the purpose of harassing Williams.  For example, Douglas brought William Morrison (a senior finance accountant) into a personal meeting between her and Williams, who had nothing to do with Williams.

25.

Plaintiff Williams was told by Defendant Douglas that she could not have an office that she was previously scheduled to move into.

26.

Williams' move into the office had been approved by her immediate supervisor, James Aldinger.

27.

Defendant Douglas would threaten Plaintiff Williams with negative evaluations.  Douglas would often say to Williams: "I have the final say."

28.

Douglas made these threats, despite the fact that Mr. Aldinger, did not have any problems with Williams' job performance.

29.

Defendant Douglas routinely and purposely shut Plaintiff Williams out of advisors' meetings.  Often time meetings were held off site and Williams would be instructed by Douglas to stay on site and not leave to go to her other schools.

_Discrimination, Disparate Treatment, Harassment, Hostile Work Environment_

30.

During the course of Plaintiff Williams' employment, Defendant Douglas subjected Williams to harassment and treated Williams differently and unequally in the terms and conditions of her employment, on account of Williams' race.

31.

Plaintiff Williams was subjected to harassing and offensive conduct, different and unequal treatment, as compared to Caucasian employees, such as to create a hostile working environment in violation of the law.

32.

For example, Plaintiff Williams had a desk that was already located in her office (for her use), and Defendant Douglas had it removed, and Douglas gave it to Patty Wright, a Caucasian female.

33.

As a result of the desk removal, Plaintiff Williams was left with a small table that could only hold a computer monitor and keyboard.  There was not working space on the small table.

34.

The rule, concerning desk removal, was that an employee could not move his/her desk once it was moved.  However, Caucasian female, Gina Bennett, was allowed to move her desk several times, without penalty.

35.

Caucasian employees were issued business cards but the "hit list" blacks were not issued business cards, and the "hit list" blacks were denied other work privileges that their Caucasian counterparts received.

36.

Plaintiff did not receive business cards.

37.

Caucasian employees were issued reimbursement for mileage and other requisitions before Black employees were issued theirs.

38.

Plaintiff Williams was routinely informed that her reimbursements were held up and or needed to be corrected.

39.

Douglas ensured that Caucasians were paid more than Black employees and received raises over black employees.

40.

For example, Patty Wright, Caucasian, was hired with a salary of $92,000 which was higher than Williams, for the same position.

41.

During the course of Plaintiff Williams employment, she was scrutinized in her job responsibilities more closely and treated differently than the Caucasian employees, on account of her race.

42.

For example, the Caucasian employees deviated from company policies on a continual basis, and they were never reprimanded, even though Plaintiff Williams put Defendants on notice of the policy violations.

43.

Defendant Douglas constantly delayed Plaintiff Williams' mileage, resulting in late submission and reimbursement.

44.

Defendant Douglas systematically held Black employees' requisitions and reimbursements.

*Notice to Defendants of Discriminatory Conduct by Douglas*

45.

Defendant SCSS/MCSS was aware of or should have been aware of the discriminatory, hostile, and unequal environment existing and created by the company through the conduct of Defendant Douglas.

46.

However, Defendant MSCC/SCSS failed to respond to Plaintiff Williams' complaint and nothing was done.

47.

For example, Plaintiff Williams met with Defendant Douglas's supervisor, Mr. Roderick Richmond, about the mistreatment by Defendant Douglas.

48.

Plaintiff Williams complained to Mr. Richmond that she was discriminated against and being singled out because she is Black.

49.

During the meeting with Mr. Richmond, Williams expressed to Mr. Richmond that she felt Douglas was trying to get rid of her and believed that Douglas would give her a bad evaluation.

50.

At the meeting with Mr. Richmond, Williams also expressed that she was treated differently from the Caucasian employees.

51.

Mr. Richmond responded with "What do you want me to do?  I am not a forensic investigator."

_Pre-termination/Post-termination    Conduct,    Hostile    Work    Environment,_
_Inducement to Breach Contract, Retaliation_

52.

Plaintiff Williams met with Mr. Richmond again, after termination, and
again he said "What you want me to do?"

53.

Defendant Douglas never told Plaintiff Williams that she was being
terminated.

54.

Also, Mr. Aldinger, Williams' supervisor, did not know Williams was being
terminated.   In fact, two weeks earlier (before Williams was notified of her
termination), Mr. Aldinger gave Williams an employee action plan with goals and
expectations for the remainder of the school year.

55.

Nevertheless, on or about two weeks after Mr. Aldinger gave Williams the
action plan, Williams was told to report to the Human Resources office and was
then told she was being terminated.

56.

Plaintiff Williams asked for a meeting with Defendant Douglas on
November 22, 2013.

57.

Instead of giving Williams a meeting, Douglas slammed the door in Williams' face.

58.

The position of Federal Program Advisor was posted in September 2014, the exact position and job title of Plaintiff Williams.

59.

And Defendant Douglas hired Patty Wright, Caucasian, for the September 2014 posted position in October 2014, at an increased salary above Plaintiff Williams.

60.

In November 2014, Defendant Douglas told Plaintiff Williams that her position was being excessed and her last day of employment as a Federal Programs Advisor would end December 2014.

61.

Additionally, Plaintiff Williams was told by Defendant Douglas that she was excessed and that there was no longer a need for a teacher evaluator.

62.

However, Williams was not a teacher evaluator, and it was not part of her job description or duties.

63.

Plaintiff Williams' separation notice stated that SCSS/MCSS no longer needed a Program Advisor, yet they hired a Caucasian female, Patty Wright, in October 2014.

64.

In fact, Plaintiff Williams was tenured with more education (Certified Counselor, Educational Specialist in Leadership and Education, Masters Degree in Middle Grade Education and a Bachelor of Science degree in Mass Communications) than Patty Wright.

65.

Plaintiff Williams' position as a Federal Program Advisor was a federal funded position.  And the Principal, Trish Taylor, at Varangon School, was told that Defendant Douglas eliminated a position that was state funded.  Without authority or justification, Douglas told the Principal that they would get their money back.

66.

Plaintiff Williams contract was maliciously breached by Defendant Douglas.

67.

Plaintiff Williams was terminated on account of her race and for complaining about discrimination and other misconduct by Defendants.

68.

Defendant Douglas' conduct and actions towards Plaintiff Williams, were malicious, hostile, willful and wanton, and without regard for Plaintiff's right to be free from abuse, on account of her race.

69.

The actions and inactions of the Defendants have been a detriment to Williams' emotional, physical and mental well-being, and she has and continues to suffer emotional distress.  As a result, she is presently undergoing therapy.

## FACTUAL ALLEGATIONS – PLAINTIFF  DEMETRI M. FAULKNER

70.

Plaintiff Faulkner filed charges against the Defendants with the Tennessee Equal Employment Opportunity Commission, charging the Defendant with the acts of discrimination, in May 2014 and July 2014.

71.

The Equal Employment Opportunity Commission issued a Notice of Right to Sue, which was received by Plaintiff on January 27, 2017, a copy of which Notice is attached as Exhibit B.

*Faulkner Contractual Position*

72.

Plaintiff Faulkner was employed by Defendant SCSS, on or about August 2007 through June 30, 2014.

73.

Plaintiff Faulkner started working as a Middle School Math Teacher and later transitioned to the position of Federal Program Advisor.

74.

During this period, up to her termination, Plaintiff Faulkner was a tenured employee.

*Faulkner's Qualifications and Work Record*

75.

Plaintiff Faulkner was a highly qualified teacher and good-productive employee of Defendant SCSS/ MCSS, prior to the merger and after the merger.

76.

During Plaintiff Faulkner's employment with Defendants SCSS/MCSS, she was never written up nor had any adverse disciplinary reports to her file, until she moved under Defendant Douglas' supervision.

*Discrimination, Harassment, Hostile Work Environment*

77.

It wasn't until the merger with Defendants MCSS that Plaintiff Faulkner experienced harassment and discrimination, on account of her race.

78.

For example, Defendant Douglas had a "shit list" and "black list" of black employees who she targeted for mistreatment.

79.

Defendant Douglas threatened Faulkner often with negative performance appraisals.

80.

Up to the time Douglas' threats started, Faulkner had good performance evaluations.

81.

Faulkner complained about the threats and Douglas furthered her harassment, for example, by sending Faulkner an email saying that she had the final input on her appraisals.

82.

Defendant Douglas instructed Plaintiff Faulkner's supervisor, Deborah Currie, to give her a poor performance appraisal.

17

*Discrimination, Disparate Treatment, Harassment, Hostile Work Environment*

83.

During the course of Plaintiff Faulkner's employment, Defendant Douglas, subjected Faulkner to harassment and treated Faulkner differently and unequally in the terms and conditions of her employment, on account of Faulkner's race.

84.

Additionally, Faulkner was subjected to harassing and offensive conduct, different and unequal treatment, as compared to the Caucasian employees, such as to create a hostile working environment in violation of the law.

85.

Caucasian employees were issued business cards but the "hit list" blacks (including Faulkner) were not issued business cards and were denied other privileges that their Caucasian counterparts received.

86.

Defendant Douglas gave Bill Morris, a Caucasian employee who was hired at the same time as Faulkner, a higher salary.

87.

Mr. Morris received a raise when Douglas realized he was being paid less than Faulkner.

88.

At the time of Mr. Morris' hire and raise, he possessed fewer degrees, and had less time with the School System, in comparison to Plaintiff Faulkner.

89.

Defendant Douglas would not issue Faulkner's assignment and directions to her in writing but rather verbally; however, she issued Caucasian employees their directions and assignments in writing.

90.

Then after Faulkner followed the verbal directions from Douglas, Douglas would say she didn't tell Faulkner that.

*Notice to Defendants of Discriminatory Conduct by Douglas*

91.

Plaintiff Faulkner complained to James Aldinger that she believed that she was being discriminated because she was black.

92.

As a result of the discrimination and harassment, Plaintiff Faulkner filed her first discriminatory charges with EEOC, in May 2014.

*Pre-termination/Post-termination   Conduct,   Hostile   Work   Environment,*
*Retaliation, Wrongful Dismissal*

93.

The harassment and retaliation escalated, and Defendant Douglas advised Plaintiff Faulkner that she would be laid off due to budget cuts.

94.

Consequently, Plaintiff filed a second discrimination charge against Defendant in July 2014.

95.

Prior to the time Plaintiff Faulkner received the lay-off notice of budget cuts, Defendant Douglas and Faulkner learned that SCSS/MCSS would demerge.  At this knowledge, Faulkner inquired to Douglas whether her job would be affected.

96.

Defendant Douglas could have released Faulkner, which would have given Faulkner (as a tenured employee) an opportunity to gain employment with another school.

97.

Instead of releasing Faulkner, Douglas held on to Plaintiff's employment.

98.

At all times after the budget cuts notice, Defendant Douglas represented to Plaintiff Faulkner that her job was secured.

99.

Plaintiff Faulkner was terminated on account of her race and for complaining about discrimination and other misconduct by Defendants.

100.

However, Faulkner was allegedly dismissed, due to work reduction, but Defendant SCSS/MCSS hired other non tenured teachers without properly considering tenured Plaintiff Faulkner.

**PART I.    KATORIA S. WILLIAMS (COUNTS I – X)**

**<u>FEDERAL CLAIMS</u>**

<u>**COUNT I**</u>
<u>**Title VII – Wrongful Termination**</u>
**(Against SCSS/MCSS)**

101.

Plaintiff Williams incorporates the allegations contained in ¶¶ 1 through 69, as if specifically plead herein.

102.

That Defendant, SCSS/MCSS, violated Title VII of the 1964 Civil Rights Act, by knowingly and willingly failing to prevent its employee, Defendant Douglas, from  the unlawful and discriminatory discharge of Plaintiff Williams, because of her race, as more specifically alleged by Williams in ¶¶ 19 through 69. That Williams put SCSS/MCSS on notice of the discrimination, as more

specifically alleged by Williams in ¶¶ 45 through 51.  And that Defendant SCSS/MCSS, knowingly and failing to affirmatively act in defense of Williams, is liable to Williams for Douglas' actions and inactions, as her Respondeat Superior, as well as the Respondeat Superior for any other supervisory employee identified in this complaint.

**COUNT II**
**Title VII - Hostile Work Environment**
**(Against SCSS/MCSS)**

103.

Plaintiff Williams incorporates the allegations contained in ¶¶ 1 through 69, as if specifically plead herein.

104.

That Plaintiff Williams was subjected to a pattern of racially discriminatory conduct that was severe and pervasive and unwelcoming by her, as more specifically alleged by Williams in ¶¶ 19 through 44 and 52 through 66.  As a result, Williams suffered and continues to suffer emotional distress.

105.

That SCSS/MCSS violated Title VII of the 1964 Civil Rights Act by knowingly and willingly failing to prevent its employee, Defendant Douglas, from creating and maintaining a hostile work environment against Williams, because of her race.  And that SCSS/MCSS, knowingly and failing to act in defense of

Williams, is liable to Williams for Douglas' action and inactions, as Douglas' Respondeat Superior, as well as the Respondeat Superior for any other supervisory employee identified in this complaint.

## COUNT III
### Title VII - Disparate Treatment
**(Against SCSS/MCSS)**

106.

Plaintiff Williams incorporates the allegations contained in ¶¶ 1 through 69, as if specifically plead herein.

107.

That Plaintiff Williams, a black female, was singled out and treated less favorably than the Caucasian employees, who were similarly situated to her, on account of her race, as more specifically alleged by Williams in ¶¶ 23 and 30 through 44.   Williams was qualified for her position, but she was, nevertheless, terminated, on account of her race.

108.

That Defendant SCSS/MCSS violated Title VII of the 1964 Civil Rights Act by knowingly and willingly failing to prevent its employee, Defendant Douglas, from disparaging Plaintiff Williams, because of her race, as more specifically alleged by Williams in ¶¶ 23 and 30 through 44.   SCSS/MCSS acted or failed to act with the conscious intent to discriminate against Williams, because of her race.

23

And Defendant, failing to act in defense of Plaintiff, is liable to Plaintiff for Douglas' actions and inaction, as her Respondeat Superior, as well as the Respondeat Superior for any other supervisory employee identified in this complaint.

### COUNT IV
### Title VII - Retaliation
### (Against SCSS/MCSS)

109.

Plaintiff Williams incorporates the allegations contained in ¶¶ 1 through 69, as if specifically plead herein.

110.

Plaintiff Williams, black female, was engaged in statutorily activity by complaining about the discriminatory activity that she experienced, as more specifically alleged by her in ¶¶ 52 through 66.  Because she complained, she suffered adverse actions, such as continuous harassment, hostility, and her ultimate termination, on account of her race.

111.

That Defendant SCSS/MCSS violated Title VII of the 1964 Civil Rights Act by knowingly and willingly failing to prevent its employee, Defendant Douglas, from retaliating against Plaintiff Williams, because of her race, as more specifically alleged by Williams in ¶¶ 52 through 66.   And Defendant, failing to

act in defense of Williams, is liable to Williams for Douglas' actions and inaction, as Douglas' Respondeat Superior, as well as the Respondeat Superior for any other supervisory employee identified in this complaint.

## COUNT V
## 42 U.S.C. §1981 – Wrongful Termination
## (Against SCSS/MCSS and Douglas)

112.

Plaintiff Williams incorporates the allegations contained in ¶¶ 1 through 69, as if specifically plead herein.

113.

That Defendants, SCSS/MCSS and Douglas, violated 42 U.S.C. 1981 and 1991, by unlawfully interfering with Plaintiff Williams' right to make and enforce a contract, through the use of harassment, hostility and disparate treatment, because of her race, as more specifically alleged by Williams in ¶¶ 19 through 69, resulting in her unlawful termination.

## COUNT VI
## 42 U.S.C. 1981 - Hostile Work Environment
## (Against SCSS/MCSS and Douglas)

114.

Plaintiff Williams incorporates the allegations contained in ¶¶ 1 through 69, as if specifically plead herein.

115.

That Defendants SCSS/MCSS and Douglas violated 42 U.S.C. 1981, by subjecting Plaintiff Williams to a pattern of racially discriminatory conduct that was severe and pervasive, such that she suffers emotional distress, as more specifically alleged by Williams in ¶¶ 19 through 69.

116.

Defendant SCSS/MCSS and Douglas created a hostile work environment, as more specifically alleged by Plaintiff in ¶¶ 19 through 44 and 52 through 66. Douglas subjected Williams to verbal conduct based on race that was severe and pervasive, such that it altered Williams' working conditions and created an abusive environment.  Douglas' actions were unwelcoming to Williams, and they caused and continue to cause Williams emotional distress.

**COUNT VII**
**42 U.S.C. 1981 – Disparate Treatment**
**(Against SCSS/MCSS and Douglas)**

117.

Plaintiff Williams incorporates the allegations contained in ¶¶ 1 through 69, as if specifically plead herein.

118.

That Defendant SCSS/MCSS and Douglas violated 42 U.S.C. 1981 by treating Plaintiff Williams differently than the Caucasian employees, on account of her race.

119.

That Plaintiff Williams, a black female, was singled out and treated less favorably than the Caucasian employees, who were similarly situated to her, on account of her race, as more specifically alleged by Williams in ¶¶ 23 and 30 through 44. Williams was qualified for her position, but she was, nevertheless, terminated, on account of her race.

120.

That Defendant Douglas treated Plaintiff Williams less favorably in comparison to her treatment of the Caucasian employees, on account of her race, as more specifically alleged by Williams in ¶¶ 23 and 30 through 44. Douglas' had a conscious intent to discriminate against Plaintiff because of her race.

**COUNT VIII**
**42 U.S.C 1981- Retaliation**
**(Against SCSS/MCSS and Douglas)**

121.

Plaintiff Williams incorporates the allegations contained in paragraphs ¶¶ 1 through 69, as if specifically pled herein.

122.

Plaintiff Williams, black female, was engaged in statutorily activity by complaining about the discriminatory activity that she experienced, as more specifically alleged by Williams in ¶¶ 52 through 66.  Because she complained, she suffered adverse actions, such as further harassment, hostility, and her ultimate termination, on account of her race.

123.

That Defendants SCSS/MCSS and Douglas violated 42 U.S.C. 1981 by retaliating against Plaintiff Williams because she complained that she was being discriminated against on account of  her race, as more specifically alleged by Williams in ¶¶ 52 through 66.   Defendants acted or failed to act with the conscious intent to discriminate against Plaintiff, because of her race.

**STATE CLAIMS**

**COUNT IX**
**Emotional Distress**
**(Against SCSS/MCSS and Douglas)**

124.

Plaintiff Williams incorporates the allegations contained in paragraphs ¶¶ 1 through 69, as if specifically pled herein.

125.

The actions and inactions of Defendants SCSS/MCSS and Douglas, as more specifically alleged by Plaintiff Williams in ¶¶ 19 through 69, were intentional, reckless, and outrageous, that caused Plaintiff severe emotional distress.

126.

As a result of Defendants' conduct, Williams has suffered humiliation and embarrassment, and she continues to suffer mental anguish.  Consequently, she is receiving ongoing counseling.

## COUNT X
### Inducement To Breach Contract
### (Against SCSS/MCSS and Douglas)

127.

Plaintiff Williams incorporates the allegations contained in ¶¶ 1 through 69, as if specifically plead herein.

128.

Defendants SCSS/MCSS and Douglas breached Plaintiff Williams' contract, as more specifically alleged by Williams in ¶¶ 52 through 69.  That their actions or failure to act were wanton and malicious and done with the intent to induce a breach of contract, such breach being the proximate result of their conduct.  And Plaintiff was injured as a result.

## PART II.   DEMETRI M. FAULKNER (COUNTS I – X)

## **FEDERAL CLAIMS**

### **COUNT I**
### **Title VII – Wrongful Termination**
### **(Against SCSS/MCSS)**

129.

Plaintiff Faulkner incorporates the allegations contained in ¶¶ 1 through 9 and 70 through 100, as if specifically plead herein.

130.

That Defendant, SCSS/MCSS, violated Title VII of the 1964 Civil Rights Act, by knowingly and willingly failing to prevent its employee, Defendant Douglas, from  the unlawful and discriminatory discharge of Plaintiff Faulkner, because of her race, as more specifically alleged by Faulkner in ¶¶ 72 through 100. That Faulkner put SCSS/MCSS on notice of the discrimination, as more specifically alleged by Faulkner in ¶¶ 81 and 91 through 92.  And that Defendants', knowingly and failing to affirmatively act in defense of Faulkner, is liable to Faulkner for Douglas' actions and inactions, as Douglas' Respondeat Superior, as well as the Respondeat Superior for any other supervisory employee identified in this complaint.

**COUNT II**
**Title VII - Hostile Work Environment**
**(Against SCSS/MCSS)**

131.

Plaintiff Faulkner incorporates the allegations contained in ¶¶1 through 9 and 70 through 100, as if specifically plead herein.

132.

That Plaintiff Faulkner was subjected to a pattern of racially discriminatory conduct that was severe and pervasive, such that she suffers emotional distress, as more specifically alleged by Faulkner in ¶¶ 77 through 90 and 93 through 98.

133.

That Defendant SCSS/MCSS violated Title VII by knowingly and willingly failing to prevent its employee, Defendant Douglas, from creating and maintaining a hostile environment against Plaintiff  Faulkner, because of her race, as more specifically alleged by Faulkner in ¶¶ 77 through 90 and 93 through 98.   And that Defendant, knowingly and failing to act in defense of Faulkner, is liable to her for Douglas' action and inactions, as her Respondeat Superior, as well as the Respondeat Superior for any other supervisory employee identified in this complaint.

## COUNT III
## Title VII - Disparate Treatment
### (Against SCSS/MCSS)

134.

Plaintiff Faulkner incorporates the allegations contained in ¶¶ 1 through 9 and 70 through 71, as if specifically plead herein.

135.

That Plaintiff Faulkner, a black female, was singled out and treated less favorably than the Caucasian employees, who were similarly situated to her, on account of her race, as more specifically alleged by Faulkner in ¶¶ 83 through 90. Faulkner was qualified for her position, but she was, nevertheless, terminated, on account of her race.

136.

That SCSS/MCSS violated Title VII by knowingly and willingly failing to prevent its employee, Defendant Douglas, from disparaging Plaintiff Faulkner, because of her race, as more specifically alleged by Faulkner in ¶¶ 83 through 90. This Defendant acted or failed to act with the conscious intent to discriminate against Plaintiff, because of her race.  And Defendant, failing to act in defense of Plaintiff, is liable to Plaintiff for Douglas' actions and inaction, as her Respondeat Superior, as well as the Respondeat Superior for any other supervisory employee identified in this complaint.

## COUNT IV
## Title VII - Retaliation
### (Against SCSS/MCSS)

137.

Plaintiff Faulkner incorporates the allegations contained in ¶¶ 1 through 9 and 70 through 100, as if specifically plead herein.

138.

Plaintiff Faulkner, black female, was engaged in statutorily activity by complaining about the discriminatory activity that she experienced, as more specifically alleged by Faulkner in ¶¶ 93 through 98.  Because she complained, she suffered adverse actions, such as further harassment, hostility, and her ultimate termination, on account of her race.

139.

That Defendant SCSS/MCSS violated Title VII by knowingly and willingly failing to prevent its employee, Defendant Douglas, from retaliating against Plaintiff Faulkner, because of her race, as more specifically alleged by Plaintiff in ¶¶ 93 through 98.   This Defendant acted or failed to act with the conscious intent to discriminate against Plaintiff, because of her race.  And Defendant, failing to act in defense of Plaintiff, is liable to Plaintiff for Douglas' actions and inaction, as her Respondeat Superior, as well as the Respondeat Superior for any other supervisory employee identified in this complaint.

33

**COUNT V**
**42 U.S.C. §1981 – Wrongful Termination**
**(Against SCSS/MCSS and Douglas)**

140.

Plaintiff Faulkner incorporates the allegations contained in ¶¶ 1 through 9 and 70 through 100, as if specifically plead herein.

141.

That Defendants SCSS/MCSS and Douglas violated 42 U.S.C. 1981 and 1991, by unlawfully interfering with Plaintiff's right to make and enforce a contract, through the use of harassment, hostility and disparate treatment, because of her race, as more specifically alleged by Plaintiff in ¶¶ 70 through 100, resulting in her unlawful termination.

142.

That Defendants SCSS/MCSS and Douglas violated Tennessee State Law by terminating a tenured employee without first offering other employment to Plaintiff Faulkner before a non-tenured employee.

**COUNT VI**
**42 U.S.C. 1981 - Hostile Work Environment**
**(Against SCSS/MCSS and Douglas)**

143.

Plaintiff Faulkner incorporates the allegations contained in ¶¶ 1 through 9 and 70 through 100, as if specifically plead herein.

144.

That Defendants SCSS/MCSS and Douglas violated 42 U.S.C. 1981, by subjecting Plaintiff Faulkner to a pattern of racially discriminatory conduct that was severe and pervasive, such that she suffers emotional distress, as more specifically alleged by Faulkner in ¶¶ 77 through 90 and 93 through 98.

145.

Defendants SCSS/MCSS and Douglas created a hostile work environment, as more specifically alleged by Faulkner in ¶¶ 77 through 90 and 93 through 98. Douglas subjected Faulkner to verbal conduct based on race that was severe and pervasive, such that it altered Faulkner's working conditions and created an abusive environment.  Douglas' actions were unwelcoming to Plaintiff, and they caused Faulkner emotional distress.

## COUNT VII
## 42 U.S.C. 1981 – Disparate Treatment
### (Against SCSS/MCSS and Douglas)
146.

Plaintiff Faulkner incorporates the allegations contained in ¶¶ 1 through 9 and 70 through 100, as if specifically plead herein.

147.

That Defendants SCSS/MCSS and Douglas violated 42 U.S.C. 1981 by treating Plaintiff Faulkner differently than the Caucasian employees, on account of her race, as more specifically alleged by Faulkner in ¶¶ 83 through 90.

148.

That Plaintiff Faulkner, a black female, was singled out and treated less favorably than the Caucasian employees, who were similarly situated to her, on account of her race, as more specifically alleged by Faulkner in ¶¶ 83 through 90. Faulkner was qualified for her position, but she was, nevertheless, terminated, on account of her race.

149.

That Defendant Douglas treated Plaintiff Faulkner less favorably in comparison to her treatment of the Caucasian employees, on account of her race, as more specifically alleged by Plaintiff in ¶¶ 83 through 90.  Douglas had a conscious intent to discriminate against Faulkner because of her race.

**COUNT VIII**
**42 U.S.C - Retaliation**
**(Against SCSS/MCSS)**

150.

Plaintiff Faulkner incorporates the allegations contained in ¶¶ 1 through 70 and through 100, as if specifically pled herein.

36

151.

Plaintiff Faulkner, black female, was engaged in statutorily activity by complaining about the discriminatory activity that she experienced, as more specifically alleged by Faulkner in ¶¶ 93 through 98.   Because Faulkner complained, she suffered adverse actions, such as further harassment, hostility, and her ultimate termination, on account of her race.

152.

That Defendants SCSS/MCSS and Douglas violated 42 U.S.C. 1981 by retaliating against Plaintiff Faulkner because she complained that she was being discriminated against on account of her race, as more specifically alleged by Faulkner in ¶¶ 93 through 98.   Defendants acted or failed to act with the conscious intent to discriminate against Plaintiff, because of her race.

**STATE CLAIMS**

**CCOUNT IX**
**Emotional Distress**
**(Against SCSS/MCSS and Douglas)**

153.

Plaintiff Faulkner incorporates the allegations contained in ¶¶ paragraphs1 through 9 and 70 through 100, as if specifically pled herein.

154.

The actions and inactions of Defendants SCSS/MCSS and Douglas, as more specifically alleged by Plaintiff Faulkner in ¶¶ 72 through 100, were intentional, reckless, and outrageous, that caused Plaintiff severe emotional distress.

155.

As a result of Defendants' conduct, Faulkner has suffered humiliation and embarrassment, and mental anguish.

### COUNT X
### Wrongful Dismissal Of Tenured Teacher
### (Against SCSS/MCSS and Douglas)

156.

Plaintiff Faulkner incorporates the allegations contained in ¶¶ 1 through 9 and 70 through 100, as if specifically pled herein.

157.

That Defendants SCSS/MCSS and Douglas' termination of Faulkner was without legal reasons, as more specifically alleged by Faulkner in ¶¶ 93 through 100.  And the termination was in violation of Tennessee State Law – Tennessee Annotated Code § 49-5-511.

158.

The actions and inactions of Defendants SCSS/MCSS and Douglas were willful, malicious, wanton, intentional, and in reckless disregard of the federally

protected rights of Plaintiffs Williams and Faulkner.  And Williams and Faulkner are entitled to an award of damages to be determined by a fair and impartial jury.

159.

Plaintiffs Williams and Faulkner have been harmed and have suffered as a result of the conduct of the Defendants, and they are entitled to damages under the provisions, including compensatory damages, back pay, front pay, punitive damages and cost of litigation, all to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Williams and Faulkner pray that this Court allows this case to go forward, that a jury be empanelled, and that Plaintiff recover:

(a)     Actual and consequential damages as proven;

(b)     Compensatory damages;

(c)     Equitable relief, including promotion to the Manager position;

(d)     Punitive damages payable to Plaintiffs as allowed by law and as decided by a fair and impartial jury so as to punish defendants and to deter future discriminatory and unlawful conduct;

(e)     Back Pay as allowed by law;

(f)     Front Pay as allowed by law;

(g)     Prejudgment interest on back pay;

(h)     All relief to which Plaintiff is entitled under Title VII and 1981;

(i)     All relief to which Plaintiff is entitled under state law claims;

(j)     Costs of litigation and attorneys fees; and

(k)     All other relief to which Plaintiff is entitled under the law.

## JURY DEMAND

Plaintiff requests trial by jury of all issues in this action.

Respectfully submitted this 25th day of April 2017.

Valerie V. Vie                          Lucinda Jones
/s/ Valerie V. Vie                      /s/ Lucinda Jones

5682 Palazzo Way, Suite 102             P.O. Box 442111
Douglasville, Georgia  30134            Detroit, Michigan  48244
Georgia Bar No. 727617                  Michigan Bar No. P81484
Tel:  770-949-1102                      Tel:  313-559-5444
Fax:  770-949-1103                      advocate.lucinda@gmail.com
valerievvie@gmail.com