# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| KATORIA S. WILLIAMS and DEMETRI M. FAULKNER, ) ) ) Plaintiffs, ) ) v. ) ) SHELBY COUNTY SCHOOL SYSTEM, ) MEMPHIS CITY SCHOOL SYSTEM, ) MARJORIE N. DOUGLAS, and SHELBY ) COUNTY BOARD OF EDUCATION, ) ) Defendants. ) ) | No. 2:17-cv-02284-TLP-cgc<br><br>JURY DEMAND |

## ORDER GRANTING DEFENDANT MARJORIE N. DOUGLAS'S MOTION TO DISMISS

Plaintiffs sued alleging mainly that their supervisor at Shelby County School System, Defendant Marjorie N. Douglas ("Ms. Douglas"), discriminated against them at work. Ms. Douglas filed a Motion to Dismiss ("Motion") all of Plaintiffs' claims against her in her individual capacity. (ECF No 42.) Plaintiffs Katoria S. Williams ("Ms. Williams") and Demetri M. Faulkner ("Ms. Faulkner," and collectively "Plaintiffs") filed a Response (ECF No. 44-1), to which Ms. Douglas filed a Reply. (ECF No. 49.) For the following reasons, Ms. Douglas' Motion is well-taken and is GRANTED.

## BACKGROUND

The standard of review for ruling on the Motion to Dismiss filed under Rule 12(b)(6) requires the Court to accept all factual allegations in the Third Amended Complaint, (ECF No. 37), as true.

Plaintiffs are African American females who were employees of Defendant Shelby County School System ("SCS") and its legacy system, Memphis City School System ("MCS"), before it merged with SCS. (*Id.* at PageID 382.) Ms. Williams was employed by SCS from September 2008 through December 2013, during which time she worked as a teacher and later as a Federal Program Advisor ("FPA"), allegedly on a yearly contract. Ms. Faulkner worked for MCS and then SCS beginning in 2002. (*Id.* at PageID 393.) Ms. Faulkner became an FPA in July 2013 after the SCS/MCS merger. (*Id.* at PageID 394.) Ms. Williams was terminated from her FPA contract position in December 2013, (*id.* at PageID 391), but she claims in her Response to the Motion that she taught for SCS during the 2014-2015 school year. (ECF No. 44-1 at PageID 481.) Although less clear on the face of the Third Amended Complaint, Ms. Faulkner asserts that she was terminated from her FPA contract position in June 2014, but she did not leave SCS until 2017. (*Id.* at PageID 481–82.)

Ms. Douglas was Plaintiffs' supervisor, and Plaintiffs paint a grim picture of her alleged conduct during that time.

**Ms. Williams' Allegations**

Plaintiffs allege Ms. Douglas improperly kept a "shit list" or a "black list" (the "List") of only black employees. Co-workers warned Ms. Williams that her name was on the List. (*Id.* at PageID 385.) Plus, Ms. Williams alleges that Ms. Douglas took her desk away from her and gave it to a white co-worker, gave business cards to white employees but not to her or other black employees on the List, ensured that white employees in the same position were paid more, unjustifiably withheld Ms. Williams' mileage reimbursements, and ultimately terminated or "excessed" Ms. Williams from her FPA position in December 2013. (*Id.* at Page ID 387–91.) Ms. Williams claims that when she tried to meet with Ms. Douglas about her termination, Ms. Douglas slammed her office door in Ms. Williams' face. (*Id.* at PageID

2

391.) Despite telling Ms. Williams that her FPA position was being excessed, or eliminated due to budget constraints, Ms. Douglas hired a white female for an FPA position at a high salary shortly before Ms. Williams' termination. (*Id.* at PageID 391.) When Ms. Williams complained about Ms. Douglas's conduct to her superiors, allegedly, her complaints were repeatedly ignored. (*Id.* at PageID 389–91.) Ms. Douglas was terminated or excessed from SCS in December 2013. (*Id.* at PageID 391.) She filed discrimination charges with the Tennessee Equal Employment Opportunity Commission ("EEOC") in January 2014, and the EEOC issued a Notice of Right to Sue letter, she received on March 1, 2017. (*Id.* at PageID 383–84.)

**Ms. Faulkner's Allegations**

Ms. Faulkner also alleges that Ms. Douglas mistreated her at work because of her race. She claims that Ms. Douglas gave a white co-worker hired at the same time as Ms. Faulkner a higher salary and that Ms. Douglas gave another less-qualified co-worker a raise after learning that Ms. Faulkner was earning more than the co-worker. (*Id.* at ECF No. 395–96.) Ms. Faulkner claims that she too did not receive business cards because she was on Ms. Douglas's List, and that Ms. Douglas threatened her with negative performance reviews. (*Id.*) When SCS did nothing in response to Ms. Faulkner's complaints about Ms. Douglas, she filed two EEOC charges, one in May 2014 and another in July 2014. (*Id.* at PageID 397–98.) When budget talks threatened to eliminate Ms. Faulkner's FPA position, Ms. Faulkner argues that Ms. Douglas could have released Ms. Faulkner from her contract and allowed her to seek another position, but Ms. Douglas allegedly refused to release her. (*Id.*) While the Third Amended Complaint is silent about when exactly Ms. Faulkner was terminated from her FPA position, there are no allegations of misconduct by Ms. Douglas occurring after 2014. Plus, Ms. Faulkner's Response suggests that she was reassigned to a teaching position for the 2014-

3

2015 school year. (ECF No. 44-1 at PageID 489.) Ms. Faulkner received the EEOC's Notice of Right to Sue letter on January 27, 2017. (ECF No. 37 at PageID 393.)

In addition to the discrimination claims against the SCS Defendants, Plaintiffs assert claims against Ms. Douglas under 42 U.S.C. § 1983 for violating due process, equal protection, and freedom of speech under the U.S. Constitution, and state law claims for "emotional distress," inducement to breach contract (brought by Williams), and wrongful termination of a tenured teacher (brought by Faulkner).

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleasure is entitled to relief." Although this standard does not require "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A motion to dismiss under FED. R. CIV. P. 12(b)(6) tests the sufficiency of the complaint's allegations by arguing the allegations establish no claim for which relief can be granted. A court considering a motion to dismiss under Rule 12(b)(6) must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court need not accept as true legal conclusions or unwarranted factual inferences. *Hananiya v. City of Memphis*, 252 F. Supp. 2d 607, 610 (W.D. Tenn. 2003) (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998)).

The complaint must contain more than labels, conclusions, and formulaic recitations of the claim's elements. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] complaint must

4

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Conclusory statements are not assumed to be true. *Id.* at 678–79. A motion to dismiss on statute of limitations grounds falls under Rule 12(b)(6) and should be granted "when it is apparent from the face of the complaint that the time limit for bringing the claim has passed." *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1308 (2d ed. 1990)).

## ANALYSIS

Ms. Douglas argues that Plaintiffs' claims against her should be dismissed because the applicable statutes of limitations have run and the allegations in the Third Amended Complaint fail to state a claim. (ECF No. 42-1.)

### I. Statutes of Limitations

To state a claim under § 1983, a plaintiff must allege the deprivation of a constitutional right caused by a person acting under color of state law. *Bell v. Ohio State Univ.*, 351 F.3d 240, 248 (6th Cir. 2003) (citation omitted). The statute of limitations on a § 1983 claim, as determined by the Tennessee personal injury statute, is one year. *See* TENN. CODE ANN. § 28-3-104. Federal law governs the separate question of when the relevant limitations period begins to run. *Bell*, 351 F.3d at 248 (citing *Kuhnle Bros. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). The limitations period ordinarily starts to run "when the plaintiff knows or has reason to know of the injury which is the basis of [her] action." *Id.* (internal quotation marks and citations omitted). Courts "have looked to what event should have alerted the typical lay person to protect his or her rights." *Id.* (quoting *Dixon v.*

*Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)). The filing of an EEOC charge does not toll the statute of limitations for a § 1983 claim. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975) (finding no tolling for § 1981 claims); *Dyer v. Radcliffe*, 169 F. Supp. 2d 770, 778 (S.D. Ohio 2001) (applying *Johnson* to § 1983 claims); *Carver v. U-Haul Co.*, 830 F.2d 1983, 1987 WL 44437, at *2 (6th Cir. 1987) (unpublished table decision) (stating that tolling decision in *Johnson* applies to § 1983 claims).

Intentional or negligent infliction of emotional distress is a personal injury tort, which is also governed by the one-year statute of limitations. TENN. CODE ANN. § 28-3-104(a)(1); *Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2004). A claim for inducement to breach a contract is governed by the three-year statute of limitations for injuries to personal or real property. TENN. CODE ANN. § 28-3-105[1]; *Mountain Mktg. Professionals, Inc. v. Fairfield Resorts, Inc.*, No. 3:04-CV-231, 2005 WL 3263282, at *3 (E.D. Tenn. Dec. 1, 2005). Under the Tennessee Teachers' Tenure statute, a tenured teacher who is dismissed or suspended by the school board "may petition for a writ of certiorari from the chancery court of the county where the teacher is employed." TENN. CODE ANN. § 49-5-513(a). "The petition shall be filed within thirty (30) days from the receipt by the teacher of notice of the decision of the board." TENN. CODE ANN. § 49-5-513(b).

## II. Plaintiffs' Claims Against Ms. Douglas

### A. Plaintiffs' Constitutional Claims Against Ms. Douglas Are Time-Barred

Plaintiffs' constitutional claims against Ms. Douglas under the First and Fourteenth Amendments are stale and barred by the statute of limitations. In an effort to save their

---

[1] The three-year statute of limitations under TENN. CODE ANN. § 28-3-105 governs actions for injuries to personal or real property and "[c]ivil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability."

claims, Plaintiffs invoke the continuing violations doctrine, arguing that their "tenured losses" caused by Ms. Douglas's discrimination and SCS's ongoing hostile work environment continued up to the filing of the original Complaint. However, Ms. Williams was terminated from her FPA position in December 2013, and Ms. Faulkner was terminated from hers in 2014.

The continuing violation doctrine tolls a limitations period when an employer's conduct "represent[s] an ongoing unlawful employment practice," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002) (quotation marks and citations omitted), but it is rarely used in § 1983 actions. *Hendrix v. DeKalb Cty. Bd. of Educ.*, 186 F. Supp. 3d 779, 785 (M.D. Tenn. 2016), *aff'd*, 678 F. App'x 398 (6th Cir. 2017) (citing *Agrawal v. Montemagno*, 574 F. App'x 570, 575 (6th Cir. 2014)). Discrete acts do not trigger the doctrine, but allegations of a hostile work environment or a "longstanding and demonstrable policy of discrimination" may. *Morgan*, 536 U.S. at 216–17; *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) (discussing examples of longstanding policy of discrimination). One act contributing to the hostile work environment claim must have occurred within the limitations period. *Morgan*, 536 U.S. at 117 ("Provided that an acting contributing to the claim occurs within the filing period, the entire time of the hostile environment may be considered by a court for the purposes of determining liability."); *Sharpe*, 319 F.3d at 267–68; *Jewell v. Shelby Cty. Gov't*, No. 13-2048-STA-DKV, 2013 WL 5306102, at *4 (W.D. Tenn. Sept. 20, 2013).

Allegations of a "long-standing and demonstrable policy of discrimination" are also sufficient to invoke the continuing violations doctrine. *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015) (unpublished) (quoting *E.E.O.C. v. Penton Indus. Publ'g*

7

*Co., Inc.,* 851 F.2d 835, 838 (6th Cir. 1988)). A plaintiff must allege that an "over-arching policy of discrimination" targeted her as a member of a protected class. *Id.* (citing *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987); *Sharpe*, 319 F.3d at 269 (holding that "discriminatory treatment" of an individual plaintiff is inadequate to invoke the longstanding and demonstrable policy of discrimination continuing violation exception)). A plaintiff must essentially allege that the company's intentional discrimination against her class was the company's standard operating procedure. *Sharpe*, 319 F.3d at 268 (citation omitted). That said, a party must still allege that a specific discriminatory act occurred within the applicable limitations period to invoke this second category of the continuing violations doctrine. *Pittman*, 612 F. App'x at 813 (citing *Dixon v. Anderson*, 928 F.3d 212, 217–18 (6th Cir. 1991), *abrogated on other grounds by Sharpe*, 319 F.3d at 268).

Here, despite accepting as true Plaintiffs' claims of a hostile work environment and a longstanding policy of discrimination,[2] the Third Amended Complaint contains no allegations that Ms. Douglas committed any acts against Plaintiffs after 2014. The last alleged act that Ms. Douglas committed against Ms. Williams occurred in November or December 2013. Ms. Faulkner asserts in the Response that she was terminated from her FPA position in June 2014. "The limitations period beings to run in response to a discriminatory act, not in mere response to the continuing effect of that discriminatory act." *Damron v. Yellow Freight Sys., Inc.*, 18 F.

---

[2] The Court notes, however, that Ms. Douglas' alleged conduct in the Third Amended Complaint, while extensive, more resembles a series of discrete acts, as opposed to establishing hostile work environment claim, because Plaintiffs were aware of the adverse actions against them when they occurred, such as the terminations of their FPA contracts. (ECF No. 37 at PageID 384–93); *see, e.g.*, *Morgan*, 536 U.S. at 114 (listing termination, failure to promote, denial of transfer, or refusal to hire as examples of discrete acts); *Bell*, 351 F.3d at 247–48 (6th Cir. 2003) (finding discrete acts include those that are readily apparent). Plaintiffs have also failed to allege that it was SCS's standard operating procedure to discriminate against black female employees.

Supp. 2d 812, 828 (E.D. Tenn. 1998), *aff'd*, 188 F.3d 506 (6th Cir. 1999) (citing *Haithcock v. Frank*, 958 F.2d 671, 678 (6th Cir. 1992)). Ms. Williams asserts that her claims accrued in June 2014 when her FPA contract would have expired. (ECF No. 44-1 at PageID 484.) Even if June 2014 were the correct date when her claims accrued, the Complaint was not filed within the one-year statute of limitations.

Plaintiffs also claim that their continued employment with SCS—until 2015 for Ms. Williams and 2017 for Ms. Faulkner—affects the continuing violations doctrine analysis. "'Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.'" *Morgan*, 536 U.S. at 112 (quoting *Delaware State College v. Ricks*, 449 U.S. 250 (1980) (rejecting litigant's argument that statute of limitations began to run at time of termination, not when decision was made to deny tenure)). The terminations of Plaintiffs' FPA contracts constitute the actionable events—not when Plaintiffs left SCS. Any claims that Plaintiffs' continued losses from the dates of termination of their FPA contracts (and continued emotional distress) somehow toll the statute of limitations for their constitutional claims are not persuasive to this Court.

Equally unavailing are Plaintiffs' contentions that SCS ignored their complaints about Ms. Douglas, so they have a right to tolling under the continuing violations doctrine. It is clear that "an employer's failure to rectify a prior discriminatory act is not sufficient for invoking the continuing-violations doctrine." *Pittman*, 612 F. App'x at 813 (citing *E.E.O.C. v. McCall Printing Corp.*, 633 F.2d 1232, 1237 (6th Cir. 1980) (holding that employer's denial of "[r]epeated requests for further relief from a prior act of discrimination" did not invoke continuing violations doctrine)). Plaintiffs' assertion that "[t]he hostile environment continued through the time [Plaintiffs'] left SCS' employment [,]" (ECF No. 44-1 at PageID

9

483)—with nothing more—is a conclusory statement that this Court gives no deference. Because Plaintiffs do not allege that Ms. Douglas committed any acts against them within the applicable one-year statute of limitations, their constitutional claims against Ms. Douglas for denial of due process, equal protection, and First Amendment retaliation are time-barred and DISMISSED WITH PREJUDICE.

### B. Plaintiffs' State Law Claims Are Also Subject to Dismissal

#### i. Emotional Distress

As Plaintiffs do not allege that Ms. Douglas committed any acts against them within one year of filing the Complaint, their claims against Ms. Douglas for intentional or negligent infliction of emotional distress should also be dismissed. *See* TENN. CODE ANN. § 28-3-104(a)(1). A claim for these torts accrues, and the limitations period begins to run, "'when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.'" *Montesi v. Nationwide Mut. Ins. Co.*, No. 2:12-CV-02399-JTF, 2013 WL 6080046, at *7 (W.D. Tenn. Nov. 18, 2013) (quoting *John Kohl & Co. P.C. v. Dearborn & Ewing,* 977 S.W.2d 528, 532 (Tenn. 1998)). The Court finds that Plaintiffs knew or should have been aware of any emotional distress that Ms. Douglas's alleged conduct would have caused as of their terminations from the FPA position in 2013 and 2014. Thus, Plaintiffs' emotional distress claims against Ms. Douglas are time-barred.

The Third Amended Complaint also fails to state a claim for any kind of emotional distress. While Plaintiffs incorporate their preceding allegations in their counts (Count IX) for emotional distress, they make the bare, conclusory statement that: "The actions of Defendant Douglas, as more specifically alleged by [Plaintiffs' in preceding paragraphs] were

intentional, reckless, and outrageous, [which] caused [Ms. Williams and Ms. Faulkner] severe emotional distress. (ECF No. 37 at PageID 404, 411.) This pleading is inadequate.[3] Discriminatory conduct does not automatically give rise to liability for emotional distress. *Epps v. FedEx Corp.*, 2:09-cv-02482, 2010 WL 297807, at *2 (W.D. Tenn. Jan. 19, 2010) (quoting *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003). Under Tennessee law, liability for emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Jones v. Tennessee Valley Auth.*, 948 F.2d 258, 265 (6th Cir. 1991) (quoting *Swallows v. W. Elec. Co.*, 543 S.W.2d 581, 583 (Tenn. 1976) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965)). Ms. Douglas's conduct as alleged is regrettable and offensive. Nevertheless, her alleged conduct in the Third Amended Complaint is not "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Jones*, 948 F.2d at 266.[4] For these reasons, Plaintiffs' emotional distress claims are DISMISSED WITH PREJUDICE.

---

[3] Plaintiffs request that the Court afford them time for additional discovery to support their emotional distress (and other) claims, but the Court declines to grant such requests when determining the sufficiency of the Third Amended Complaint's allegations. *See Iqbal*, 556 U.S. at 678–79 (stating that "a plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery").

[4] In *Jones*, plaintiff's supervisors intimidated him by assigning menial tasks to him, unfairly reprimanded him, gave him low performance appraisals, monitored his communications with government agencies, and barred him from promotions, bonuses, and raises. 948 F.2d at 266. The court found that while such conduct may be tortious, it is not necessarily synonymous with "outrageous" conduct. *Id.*

### ii. Ms. Williams' Claim for Inducement to Breach a Contract

Ms. Williams claims that the three-year statute of limitations for torts against personal or real property governs her inducement to breach a contract claim. *See* TENN. CODE ANN. § 28-3-105. Ms. Douglas does not dispute this statute of limitations. (ECF No. 49 at PageID 520.) There is case law to support the three-year statute of limitations for inducement to breach a contract. *See Stratton v. Wommack*, 230 F. App'x 491, 495 (6th Cir. 2007) (applying the same statute of limitations to both common law and statutory causes of action for inducement to breach a contract). Because there is no dispute about applying the three-year statute of limitations, the Court reviews Ms. Williams' claim under TENN. CODE ANN. § 28-1-105.[5]

As with an emotional distress claim, the cause of action for inducement to breach a contract accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when it should have been discovered under reasonable care and diligence. *Stratton*, 230 F. App'x at 495 (quoting *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975) (footnotes omitted)). Here, Ms. Douglas's alleged inducement to breach Ms. Williams' FPA contract occurred in December 2013 when she terminated her FPA contract. Thus, her inducement to breach a contract claim expired in December 2016.

---

[5] Neither party references *Benz–Elliot v. Barrett Enters., LP*, 456 S.W.3d 140, 141 (Tenn. 2015), in which the Tennessee Supreme Court clarified "the analysis that should be used to determine the applicable statute of limitations when a complaint alleges more than one claim." Courts must now identify and determine the gravamen of each claim, which requires consideration of "both the legal basis of the claim and the injury for which damages are sought." The Court finds that, for example, the six-year statute of limitations for breach of contract actions under TENN. CODE ANN. § 28-3-109 would not apply because Ms. Douglas was not a party to Plaintiffs' alleged FPA contracts with SCS. Instead, the basis for Ms. Williams' claim against Ms. Douglas for inducement to breach a contract sounds in tort, and not contract. It is possible that the statute of limitations for inducement to breach a contract is one year under TENN. CODE ANN. § 28-3-104, but the Court does not make that determination because it would not affect the Court's holding.

Ms. Williams provides no support for her statement that the continuing violations doctrine tolls the statute of limitation for inducement to breach a contract. (*See* ECF No. 44-1 at PageID 482.) Ms. Williams' inducement to breach a contract claim is time-barred and thus DISMISSED WITH PREJUDICE.

### iii. Ms. Faulkner's Claim for Wrongful Termination of a Tenured Teacher

Ms. Faulkner's claim against Ms. Douglas as an individual for wrongful termination of a tenured teacher is confusing, at best. If indeed Ms. Faulkner had alleged that Ms. Douglas terminated her from SCS, any conceivable claims would be against SCS, and specifically Defendant Shelby County Board of Education ("SCBOE"), for wrongful termination of a tenured teacher and an unlawful delegation of powers from the school board to a FPA program supervisor. *See* TENN. CODE ANN. §§ 49-2-203(a)(2), 49-5-511; *see also Kelley v. Shelby Cty. Bd. Of Educ.*, 198 F. Supp. 3d 842, 851 (W.D. Tenn. 2016) ("Tennessee law makes local school board responsible for conferring tenure and dismissing tenured teachers."). However, Ms. Faulkner alleges that Ms. Douglas terminated her as "a tenured teacher" from her contractual FPA position, not SCS.

Ms. Faulkner provides no analysis or explanation for how she has a claim against Ms. Douglas individually for the loss of her FPA job under the Teachers' Tenure statute. She cites no law to support her proposition that the three-year statute of limitations under TENN. CODE ANN. § 28-3-105 applies.[6] She merely cites the language of the act that a tenured teacher "may" appeal the school board's termination decision to the chancery court, but she fails to acknowledge the next subsection, which states that the petition "shall" be filed in thirty days

---

[6] As Ms. Douglas points out, Ms. Faulkner erroneously cites TENN. CODE ANN. § 47-50-109, the statutory cause of action for inducement of breach of a contract, for the statute of limitations for wrongs committed against property. TENN. CODE ANN. § 28-3-105.

after termination. TENN. CODE ANN. § 49-5-513(b). Even if Ms. Faulkner were to state a valid claim against Ms. Douglas, the Third Amended Complaint contains no allegations that would allow the Court to disregard the time limit for the remedy in § 513.

Also, the Teachers' Tenure statute permits the director of schools, "when necessary to the efficient operation of the school system," to transfer a teacher "from one type of work to another for which the teacher is qualified and licensed." TENN. CODE ANN. § 49-5-510. Ms. Faulkner herself asserts that the FPA position was contractual, and she returned to teaching for SCS until she left her employment in 2017. The Court finds no allegations that her FPA job had anything to do with her tenure, and Ms. Faulkner appears to conflate the two in the Third Amended Complaint and her Response. The Court rejects the notion that Ms. Faulkner could not sue for Ms. Douglas' termination of her FPA contract until after she left SCS. For these reasons, Ms. Faulkner's claim against Ms. Douglas for wrongful termination of a tenured teacher is DISMISSED WITH PREJUDICE.

## CONCLUSION

The Court finds that all of Plaintiffs' claims against Ms. Douglas are untimely or fail to state a claim. Defendant Marjorie N. Douglas's Motion to Dismiss is therefore GRANTED, and Plaintiffs' claims against her are DISMISSED WITH PREJUDICE.

**SO ORDERED**, this 2nd day of May, 2018.

                               s/ Thomas L. Parker
                               THOMAS L. PARKER
                               UNITED STATES DISTRICT JUDGE