# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| KATORIA S. WILLIAMS and <br> DEMETRI M. FAULKNER, <br><br> Plaintiffs, <br><br> v. <br><br> SHELBY COUNTY SCHOOL SYSTEM, <br> MEMPHIS CITY SCHOOL SYSTEM, and <br> REGISTERED AGENT, MARJORIE N. <br> DOUGLAS, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) No. 2:17-cv-02284-TLP-cgc <br> ) <br> ) JURY DEMAND <br> ) <br> ) <br> ) <br> ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND EXPENSES AND DENYING PLAINTIFFS' MOTION TO CERTIFY CONSTITUTIONALITY OF TENN. CODE ANN. § 29-20-113

Defendant Marjorie N. Douglas ("Douglas") moves this Court for an award of attorney's fees and expenses after successfully defending herself here. (ECF Nos. 110, 112, & 139.) Plaintiffs responded and the Motion is now ripe. Having considered the arguments of counsel and the entire record, for the reasons below, the Court GRANTS IN PART AND DENIES IN PART Douglas' Motion. Plaintiffs' Motion to Certify is DENIED.

## BACKGROUND

Plaintiffs were employees of Defendant Shelby County School System ("SCS") and Douglas was their supervisor. (ECF No. 37 at PageID 384, 393–94.) Plaintiffs later sued SCS and Douglas for discrimination. (*See* ECF No. 37.) Plaintiffs sued Douglas both in her official and individual capacities, accusing her of: (1) violating the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983; (2) violating the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983; (3) retaliating in violation of the First Amendment under 42

U.S.C. § 1983; (4) causing emotional distress under Tennessee law; (5) inducing a breach of contract under Tennessee law; and (6) wrongly dismissing a tenured teacher under Tennessee law. (*Id*. at PageID 403–12.) Douglas moved to dismiss all claims against her in her individual capacity. (ECF No. 42.) Because Plaintiffs claims were obviously time-barred, the Court granted Douglas' Motion. (ECF No. 108.)

Now, Douglas moves under Rule 54(b) of the Federal Rules of Civil Procedure and Local Rule 54.1(b) to recover attorney's fees and expenses related to this litigation. (ECF Nos. 110, 112, & 139.) As grounds for her Motion, Douglas asserts that the Court may award her fees and expenses under 42 U.S.C. § 1988, 28 U.S.C. § 1927, Tennessee Code Annotated § 20-12-119, Tennessee Code Annotated § 29-20-113, and the Court's inherent authority. (ECF Nos. 110-1, 112.)

As a result of Douglas' Motion, Plaintiffs move under Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(b) to certify the constitutionality of Tennessee Code Annotated § 29-20-113 to the Tennessee Attorney General, and, if necessary, to the Tennessee Supreme Court. (ECF Nos. 152 & 158.) Plaintiffs have also disputed the reasonableness of the requested attorney's fees award. (ECF Nos. 118, 144, 155.)

## **LEGAL STANDARD**

**I.     Granting an Award of Attorney's Fees and Expenses**

Federal courts follow the American Rule and generally require parties to bear their own costs and attorney's fees. *Alyseka Pipeline Servs. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). The exception to this rule is when the award of fees is authorized by statute. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 561–62 (1986). When that is the

case, a party claiming entitlement to attorney's fees and related expenses must generally move for those fees under Rule 54(d)(2) of the Federal Rules of Civil Procedure. Under this rule, the movant must specify the grounds on which she is seeking the award and the amount she is seeking. Fed. R. Civ. P. 54(d)(2)(B)(ii)–(iii).

In addition to these requirements, the movant is also required under the Local Rules to submit a memorandum of law supporting the award, an affidavit detailing the number of hours spent on "each aspect of the case" and the rate typically charged by the attorney, and the affidavit of an attorney in the community, who has no other involvement in the matter, "setting out the prevailing rate charged in the community for similar services." LR 54.1(b). Douglas' counsel provided the necessary support under the local rules of this Court.

## II.     Calculation of Fee Award

### A.     Federal Law

Federal courts calculate an award of reasonable attorney's fees by using the "lodestar" method. *Delaware Valley Citizens Council for Clean Air*, 478 U.S. at 564. This method involves multiplying the reasonable hourly rate by the reasonable number of hours expended on the litigation. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Additionally, courts will compensate parties for the work of paralegals and law clerks. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285–86 (1989).

The burden of proof lies with the movant. "The party seeking attorney's fees 'bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "The key requirement for an award of attorney's

fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Inwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008).

As noted above, the first step is to calculate the number of hours "reasonably expended" in the litigation. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997). Likewise, courts will exclude hours not "reasonably expended" from their calculations. *Hensley*, 461 U.S. at 434. In calculating an appropriate award, the district court must explain its reasoning. *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004). That said, "the trial court 'should not become green-eyeshade accountants' as the 'essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.'" *Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 603 (6th Cir. 2014) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). "District courts 'may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'" *Id.* (quoting *Fox*, 563 U.S. at 838).

The second step is for the Court to determine a reasonable hourly rate. *Hensley*, 461 U.S. at 433. Typically, courts calculate that hourly rate by looking at the prevailing market rates in the relevant community. *Blum*, 465 U.S. at 895. Local Rule 54.1(b)(2) also requires the party moving for attorney fees to file the affidavit of an attorney, who is not associated with the case, detailing what the prevailing market rates are in the community. "[H]ourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986). The federal approach is

somewhat different from the approach under Tennessee law but, under either approach, courts consider many of the same factors.

B. **Tennessee Law**

Under Tennessee law, awards of attorney's fees are not subject to a "fixed mathematical rule" and are based on the trier of fact's subjective judgment of the evidence and experience. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citation omitted). At the same time, a multi-factor analysis set forth in Tennessee Rule of Professional Conduct 1.5 guides this determination. *Id.* A court considers these factors in making its determination:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5. Ultimately, "the reasonableness of the fee must depend upon the particular circumstances of the individual case." *Wright*, 337 S.W.3d at 181 (quoting *White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996)).

## ANALYSIS

I. **42 U.S.C. § 1988**

Douglas first moves for an award of attorney's fees and expenses under 42 U.S.C. § 1988. (ECF No. 110-1 at PageID 843.) Section 1988(b) authorizes the Court to award attorney's fees "in

its discretion" to the prevailing party in an action brought to enforce, among other things, 42 U.S.C. § 1983. The "legal standard articulated in *Christianburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), governs assessment of attorney's fees under" this statute. *Russ v. Memphis, Light Gas and Water Division*, No. 14-02365, 2017 WL 2539803, at *3 (W.D. Tenn. June 12, 2017). Under the *Christianburg* framework, a "plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christianburg Garment Co.*, 434 U.S. at 422. Congress enacted this statute "to protect defendants from burdensome litigation having no legal or factual basis." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christianburg Garment Co.*, 434 U.S. at 420). The Sixth Circuit has held that "[a]n award of attorney fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (quoting *Jones v. The Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)).

Here, the claims against Douglas were barred by the statute of limitations. It is tempting here to award fees under this statute because the claims were frivolous or became so during litigation. That said, if the Court were to make such an award, the burden would fall on the Plaintiffs and not the lawyers. Yet, as explained below, this Court finds fault more with the lawyers than Plaintiffs themselves. As a result, the Court finds that awarding fees is more appropriate as a sanction on counsel under other statutes. The Court will thus employ its inherent discretion to decline to award fees and expenses under this statute.

## II.     28 U.S.C. § 1927

Second, Douglas moves for fees and expenses under 28 U.S.C. § 1927.  (ECF No. 110-1 at PageID 845.)  Under 28 U.S.C. § 1927, Courts may award fees in the form of sanctions against an attorney who "objectively 'falls short of the obligations owed by a member of the bar to the court.'" *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 968 (6th Cir. 2018) (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)).  The movant must show that the attorney's conduct amounted to "something more than negligence or incompetence," but it does not require establishing that the attorney subjectively acted in bad faith.  *Id*. (quoting *Red Carpet*, 465 F.3d at 646).  At its core, this statute imposes sanctions on those attorneys who "abuse[] the judicial process" and needlessly multiply the proceedings.  *Id*. at 968–69 (quoting *Red Carpet*, 465 F.3d at 646).  The Court finds that an award of fees and expenses under this statute against Plaintiffs' lawyers, Valeri Vie and Lucinda Jones is appropriate.  Without deciding whether bad faith was involved, the Court finds that Ms. Vie's and Ms. Jones' failure to make an objective assessment of the application of the statute of limitations and to advise their clients accordingly to cease needless litigation was an objective failure deserving of sanction here.  Courts rightfully expect lawyers to "not bring or defend a proceeding, or assert or controvert an issue therein, unless after reasonable inquiry the lawyer has a basis in law and fact for doing so that is not frivolous . . . ."  Tenn. Sup. Ct. R. 8, RPC 3.1.  This includes "act[ing] reasonably to inform themselves about the facts of their client's case and the law applicable to the case and then act[ing] reasonably in determining that they can make good faith arguments in support of their client's position."  *Id*. cmt. 2.

With that in mind, before assessing the award, the Court has more questions to answer to determine the appropriate amount.

### A. The Date from Which the Fee Award Runs

The Court should first determine the point from which the fee award begins to run. Section 1927 authorizes a court to sanction an attorney from "the point in time when the attorney's pursuit of . . . claims became unreasonable and vexatious." *Carter v. Hickory Healthcare Inc.*, 2017 WL 1711043, at *2 (N.D. Ohio May 3, 2017) (quoting *Garner v. Cuyahoga Cty. Juvenile Ct.*, 554 F.3d 624, 646 (6th Cir. 2009)), *aff'd*, 905 F.3d 963 (6th Cir. 2018). Here, the filing of Douglas' motion to dismiss constitutes the last point in time when counsel for Plaintiffs became aware of the statute of limitations issues with their claims. (*See* ECF No. 42.) Rather than conceding that the limitations period had run on their claims, the Plaintiffs' attorneys continued to assert the claims arguing, without support, that they were timely under the continuing violations doctrine. (ECF No. 44-1.) It was at this point that the attorneys failed to reasonably inform themselves of the applicable law to preserve the integrity of the judicial process by not asserting frivolous arguments.

The Court finds Plaintiffs' attorneys' actions frivolous because they were unable to make a good faith argument for application of the continuing violations doctrine here. First, Plaintiffs did not allege a specific discriminatory act occurring within the applicable limitations period. Of course that is necessary to invoke the continuing violations doctrine for their constitutional claims. (ECF No. 108 at PageID 1111.) Second, case law makes it clear that the continuing violations doctrine does not apply when an employer merely fails to remedy prior discriminatory acts. (*Id*. at PageID 1112.) Plaintiffs asserted just conclusory statements to support their positions. (*Id*. at PageID 1113.) Third, Plaintiff Williams provided no support for her proposition that the continuing

violations doctrine applied to her breach of contract claim. (ECF No. 108 at PageID 1116.) Plaintiffs' position here was groundless. Finally, Plaintiff Faulkner cited no case law to support holding Douglas liable for her termination under the Teacher Tenure Act, Tenn. Code Ann. §§ 49-2-203(a)(2), 49-5-511. (*Id*. at PageID 1116.) Even more, Plaintiff argued that a three-year statute of limitations applied while citing a portion of the Teacher Tenure Act that gives terminated teachers only 30 days to appeal their termination to the chancery court. (*Id*.); *see also* Tenn. Code Ann. § 49-5-513(b). The Court found that none of the claims against Douglas could withstand the motion to dismiss. (*See* ECF No. 108.)

As a result, Plaintiffs' attorneys' actions constituted a needless multiplication of the proceedings. This is the exact type of conduct that courts should sanction under § 1927. *See Carter*, 905 F.3d at 969. As stated by the Sixth Circuit, "[m]aintaining a clearly time-barred lawsuit constitutes a classic example of conduct that warrants a sanction." *Id*. Plaintiffs' counsel perhaps should have recognized that these complaints were time-barred before bringing the claims. Regardless, there is no justification for the unreasonable pursuit of these claims after Douglas informed Plaintiffs of the statute of limitations, along with case law supporting her assertions. It was when Douglas' lawyers noted the claims were barred that counsel for Plaintiffs objectively fell short of their duty owed to the Court. So the Court finds that the fee award under § 1927 should begin to run on the date Plaintiffs' responded to Douglas' Motion to Dismiss arguing the litigation should proceed, October 17, 2017.

### B. Calculating the Lodestar Amount

Having found that the fee award should start on October 17, 2017, the Court should now determine a reasonable fee award. Counsel for Douglas submitted invoices showing that Douglas

9

incurred $78,123.89 in fees and expenses after that date. Robin H. Rasmussen, attorney for Douglas, following Local Rule 54.1(b)(1), submitted an affidavit setting out the rate she and her associates and paralegals customarily charge for such work and the hours expended. (ECF No. 110-2.) While Robert O. Binkley, Jr., Douglas' second attorney, did not submit a comparable affidavit, counsel did submit an affidavit of a nonparticipating, local attorney who set out the prevailing rates charged in the community for similar services under Local Rule 54.1(b)(2) (ECF No. 110-3) and the billing statements show the fees charged by his firm (*see, e.g.*, ECF No. 154 at PageID 1196). These submissions are adequate, as they allow the Court to assess the reasonableness of the fees charged.

      i.      **How many hours did counsel reasonably expend?**

The Court should first determine how many hours the attorneys reasonably spent representing their client after October 17, 2017. This is not an exact science and the Court may consider its overall sense of the suit in making this determination. *See Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 603 (6th Cir. 2014) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). The attorneys have submitted records showing that they billed about 369.3 hours of work after October 17, 2017.[1] That said, the Court finds that it should not impose the entire amount billed on the other side.

As noted by Plaintiffs, Douglas hired a second firm to take over her representation after she moved to dismiss the case. Her second attorney did not make his appearance on the record until May 16, 2018. (*See* ECF No. 109.) While a litigant is free to hire the lawyer of her choosing and research issues of her choosing, the other side should not always pay for those choices, even when,

---

[1] This includes work performed by lead attorneys, associates, and paralegals.

as here, the Court awards attorney fees. What is more, billing for the work of another law firm before that firm has appeared in the case seems unfair. The Court finds that it is not appropriate here to award attorney fees for the billing of two law firms before Mr. Binkley made his appearance. Thus, the Court will deduct 24.8 hours charged by Mr. Binkley's firm before his entry of appearance. Likewise, the Court also reduces the time billed by Ms. Rasmussen's firm by 4.6 hours for time charged after Mr. Binkley made his appearance.

Next, the overall time should be reduced by 5.1 hours for time spent researching and drafting a motion to deposit settlement funds under Federal Rule of Civil Procedure 67. The Court may not order parties to deposit funds under this rule, so awarding fees for that research is not appropriate. All that said, the Court does not seek to punish Douglas' attorneys for researching ways to achieve their client's objectives. As stated above, fundamental fairness requires that the Court not impose every expenditure against the other side, even when those expenditures relate to good-faith efforts to meet their client's needs. This is such a situation.

Finally, the Court should address Plaintiffs' argument that there is a three percent cap on hours pent seeking an award of attorney's fees. (*See* ECF No. 155 at PageID 1202.) Plaintiffs' cite *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986), for the proposition that a party is "only entitled to 3% of the billable hours of the main case" for hours spent seeking an award of attorney's fees. (*Id.*) Yet the Sixth Circuit has abrogated *Coulter*'s three percent cap. *See Ne. Coal. for the Homeless v. Husted*, 831 F.3d 686, 725 (6th Cir. 2016) (abrogating the attorney fee cap rule announced in *Coulter*, 805 F.2d at 151). For these reasons, the Court will not impose a three percent cap on the hours spent by Douglas' attorneys.

11

In sum, the Court finds that Douglas' attorneys reasonably expended 334.8 hours on this matter.

ii. **What is a reasonable hourly rate?**

The next step in determining a reasonable fee award is to determine a reasonable rate. Both Ms. Rasmussen and Mr. Binkley charged Douglas a rate of $250.00 per hour for work performed on her behalf. Additionally, Ms. Rasmussen's associate charged $175.00 per hour and Mr. Binkley's associate charged $200.00 per hour. Finally, Ms. Rasmussen's paralegal charged rates ranging from $110.00 to $125.00 per hour.

Courts generally determine reasonable hourly rates by looking at the prevailing rate in the relevant market. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). Here, the affidavit of Clinton H. Scott, an attorney in the relevant market, attested to the reasonableness of the rates charged by the attorneys. (*See* ECF No. 110-3.) In fact, his affidavit states that attorneys routinely charge more per hour for their work than what Douglas' attorneys charged here. (*See id*.) The Court therefore finds that the rates charged by the attorneys here are reasonable.

iii. **What is the lodestar figure?**

After determining that the fees charged are reasonable, and that the reasonable hours expended are 334.8, the Court should calculate the lodestar figure. The Court determines that the initial figure here is $78,123.89 for fees and expenses. That said, these deductions should be applied to calculate the final lodestar figure:

1) $25,000 paid by Shelby County Schools on Douglas' behalf; and

2) 25% reduction for the redundant nature of the second law firm's work.

All in all, the final lodestar figure amounts to $39,842.92, after heeding the above deductions.[2] The Court imposes this amount against Plaintiffs' former attorneys, Valerie Vie and Lucinda Jones, personally under 28 U.S.C. § 1927.[3]

It is worth pointing out that this award represents an expense to Douglas which she would not have incurred but for the vexatious nature of this litigation spurred on by Plaintiffs' attorneys. The actions of Ms. Vie and Ms. Jones amounts to more than negligence or incompetence. They knowingly and intentionally multiplied these proceedings to grind down Douglas, resulting in a needless multiplication of these proceedings. This award under § 1927 adequately compensates Douglas for the extra expenses she incurred.

### III. Tennessee Code Annotated § 20-12-119

As a third ground for an award of attorney's fees, Douglas argues that she is entitled to this award under Tennessee Code Annotated § 20-12-119. (ECF No. 110-1 at PageID 845.) Section 20-12-119(c)(1) provides:

> [I]n a civil proceeding, where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties. The awarded costs and fees shall be paid by the party or parties whose claim or claims were dismissed as a result of the granted motion to dismiss.

Tenn. Code Ann. § 20-12-119(c)(1). Even so, this statute does not apply because it is procedural and does not apply in federal court. *See J-Line Pump Co., Inc. v. Chand*, 2014 WL 12626361, at

---

[2] $78,123.89 (-) $25,000 = $53,123.89 less 25% ($13,280.97) = $39,842.92.
[3] "A sanctioned attorney is thus required to personally satisfy the excess costs attributable to h[er] misconduct." *Red Carpet*, 465 F.3d at 646.

13

*1–2 (W.D. Tenn. Sept. 19, 2014) ("Section 20-12-119 is procedural for *Erie* purposes and does not apply to this case."). And the statute states that it applies when the court grants a motion to dismiss under "Rule 12 of the Tennessee Rules of Civil Procedure;" not Rule 12 of the Federal Rules of Civil Procedure. *See id*. Section 20-12-119 does not apply.

## IV. Tennessee Code Annotated § 29-20-113

Douglas next moves for an award of fees and expenses under Tennessee Code Annotated § 29-20-113 which states:

> [I]f a claim is filed with a Tennessee or federal court . . . against an employee of the state or of a governmental entity of the state in the person's individual capacity, and the claim arises from actions or omissions of the employee acting in an official capacity or under color of law, and that employee prevails in the proceeding as provided in this section, then the court or other judicial body on motion shall award reasonable attorneys' fees and costs incurred by the employee in defending the claim filed against the employee.

Tenn. Code Ann. § 29-20-113(a). (*See* ECF No. 112 at PageID 863.) The inclusion of claims against the employee in their official capacity does not preclude an award under the statute for those claims brought against the defendant in his or her individual capacity. Tenn. Code Ann. § 29-20-113(c).

### A. Application of State Law Fee-Shifting Statutes

To what claims would this fee-shifting statute apply? "Federal Courts must generally apply state law regarding attorney fees to a state law claim pendent to a federal claim." *Shimman v. Int'l Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1237 n.17 (6th Cir. 1984) (citing *Alyseka Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975)). Under *Erie*, "[f]ederal courts sitting in diversity . . . will [customarily] apply state 'fee-shifting rules that embody a substantive policy, such as a statute which permits a prevailing party in certain classes of litigation

14

to recover fees.'" *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 532 (6th Cir. 2008) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991)). That said, the state statute would not be applied when it interferes with a valid federal statute or court rule. *Chambers*, 501 U.S. at 52. Put simply, Tennessee Code Annotated § 29-20-113 will be applied here only if it reflects a substantive policy of the State and does not interfere with a valid federal statute or court rule.

Here, § 29-20-113 permits persons sued in their individual capacity, for claims arising out of acts or omissions taken while the person was acting under color of state law, and who have prevailed in the suit to recover reasonable attorney's fees. Thus, it permits a particular class of litigants to recover fees. And the statute embodies a substantive policy of the state to prevent meritless litigation against state employees in their individual capacities. Further this statute allows for the award of attorney's fees based on the success of the underlying merits of the claim, not "based upon the conduct of the parties and the attorneys in filing and litigating the claim." *Cf. First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 529 (6th Cir. 2002) (stating that an Ohio statute allowing for the award of attorney's fees based on the frivolous conduct of a party was procedural and did not apply under *Erie*). The Court finds, therefore, that the fee-shifting statute should be applied to the state law claims brought against Douglas in her individual capacity.

### B. Fee Award Under State Law

Plaintiffs brought four state law claims against Douglas in her individual capacity for acts she allegedly performed in her official capacity as supervisor at SCS. (*See* ECF No. 37 at PageID 404–05, 411–12.) These four claims amount to twenty percent of the claims brought against Douglas.[4] Consequently, the Court will award an amount equal to twenty percent of the overall

---

[4] Plaintiffs brought ten claims against Douglas in both her official and individual capacities. (*See*

reasonable fees to Douglas under this statute. This amounts to $7,968.58.[5] The Court thus finds that Plaintiffs are liable to Douglas for $7,968.58 under Tennessee Code Annotated § 29-20-113(a).

      C.      **Plaintiff's Challenge to Constitutionality of State Statute**

Plaintiffs' have now moved to challenge the constitutionality of § 29-20-113, or in the alternative, for the Court to certify this question to the Tennessee Supreme Court. (ECF Nos. 152 & 158.) Plaintiffs argue that the application of this statute violates the Supremacy Clause of Article VI of the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. (ECF No. 158 at PageID 1212.)

It has long been a principal of federal courts that constitutional issues should be avoided when a nonconstitutional ground exists to decide an issue. *Firestone v. Galbreath*, 976 F.2d 279, 285–86 (6th Cir. 1992) ("Deciding constitutional issues only after considering and rejecting nonconstitutional ground for the decision is a 'fundamental rule of judicial restraint.'") (quoting *Three Affiliated Tribes of the Fort Berthold Reservation v. World Engineering*, 467 U.S. 138, 157 (1984)). Here, Douglas moved for attorney's fees and expenses on May 16, 2018. (ECF Nos. 110 & 112.) Local Rule 7.2(a)(2) states that a party has fourteen days to respond after being served with a motion. Plaintiffs thus had until May 30, 2018, to respond to Douglas' motion for fees and expenses. *See* Fed. R. Civ. P. 6(a)(1). The Plaintiffs filed a timely response but failed to address the application or constitutionality of the state laws at issue. (*See* ECF No. 118.) In fact, Plaintiffs

---

ECF No. 37.) Each claim constitutes two separate claims because they were brought against Douglas in her two separate capacities; resulting in twenty separate claims. So the four state law claims amount to twenty percent of all claims against Douglas.
[5] The Court finds that the final lodestar figure, $39,842.92, is also reasonable under Tennessee law because of the length of litigation, the prevailing market rate, the written agreement establishing a fixed fee, and the outcome of the litigation. Thus, $39,842.92 (final lodestar figure) x 20% = $7,968.58.

did not dispute the constitutionality of § 29-20-113 until six months after the Motion was filed. (*See* ECF No. 152.) This was only after the Court held a hearing to address the pending motion for fees and expenses and allowed Plaintiffs to respond to the reasonableness of the award sought by Douglas. (*See* ECF No. 148, Minute Entry). The Court finds that Plaintiffs have waived their opportunity to challenge the constitutionality of Tennessee Code Annotated § 29-20-113.[6]

The Court has also restrained its application of the state fee-shifting statute to claims arising under state law and adjudicated under supplemental jurisdiction. The Court's ruling does not supplement or obstruct the purposes of 42 U.S.C. § 1988. For that reason, no preemption issue results.[7] And failure to apply the state statute could result in forum shopping. Thus, Plaintiffs' Motion to Certify the Constitutionality of § 29-20-113 is DENIED.

## **CONCLUSION**

For these reasons, the Court GRANTS IN PART AND DENIES IN PART Douglas' Motion for Attorney's Fees and Expenses. Attorneys Valerie Vie and Lucinda Jones are personally liable to Douglas for $39,842.92 under 28 U.S.C. § 1927, and Plaintiffs are liable to Douglas for $7,968.58 under Tennessee Code Annotated § 29-20-113(a). The total fees awarded are $47,811.50.

Plaintiffs' Motion to Certify the Constitutionality of Tennessee Code Annotated § 29-20-113(a) is DENIED.

---

[6] And the Court has given Plaintiffs adequate time to make their arguments about attorney's fees.
[7] State laws may be preempted by conflicting federal laws either expressly or impliedly. *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 583 (6th Cir. 2013). Implied preemption exists where "pervasive federal regulation preclude[s] enforcement of state laws on the same subject . . . [or] state law actually conflicts with federal law if either 1) compliance with both is impossible, or 2) the state requirement is an obstacle to the full purposes and objectives of Congress." *Id*. at 584 (internal quotations and citations omitted) (alteration in original).

**SO ORDERED,** this 7th day of February, 2019.

                                                  s/Thomas L. Parker
                                                  THOMAS L. PARKER
                                                  UNITED STATES DISTRICT JUDGE